UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL M. BROTT,

    Plaintiff,

v.                                                    Case No. 1:12-cv-574
                                                    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                     /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff was born on July 30, 1982 (AR 145).[1] She alleged a disability onset date of August 6, 2005, when she was injured in an auto accident (AR 145, 226). Plaintiff completed two years of college, and had previous employment as a cashier, a sales clerk and as a janitor at a hospital (AR 53-55, 151, 155, 165). Plaintiff identified her disabling conditions as back pain due to an auto accident (AR 150). Plaintiff stated that this condition limited her ability to work, because she is unable to sit, stand or walk for very long without being in pain, and the pain medication makes her drowsy (AR 150). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 29, 2010 (AR 10-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is

---

[1] Citations to the administrative record will be referenced as (AR "page #").

now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since her SSI application date of May 2, 2008 (AR 12). Second, the ALJ found that plaintiff had severe impairments of lumbar degenerative disc disease ("DDD") and obesity (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). In this regard, the ALJ reviewed Listing 1.04 (disorders of the spine) (AR 14). The ALJ decided at the fourth step as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she is limited to performing work that allows for a sit/stand at will option in an 8-hour work day. She can never crawl, crouch, kneel, or climb ladders, ropes, or scaffolds, and she can only occasionally stoop, balance, and climb ramps and stairs. She must avoid concentrated exposure to vibrations, and she must not work around hazards such as unprotected heights or dangerous/moving machinery. In addition, she is limited to performing unskilled, simple, repetitive tasks.

(AR 15). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 18).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled sedentary work in the regional and national economies (AR 39). Representative occupations include: video surveillance monitor (2,000 jobs regionally and 82,000 jobs nationally); visual inspector (2,200 jobs regionally and 110,000 jobs nationally); and order checker (4,800 jobs regionally and 180,000 jobs nationally) (AR 19-20). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since May 2, 2008, the date the

4

application for SSI was filed (AR 20).

**III. ANALYSIS**

Plaintiff has raised two issues on appeal:

> **A. The ALJ erred in assessing residual functional capacity because he improperly gave substantial weight to a non-examining physician while failing to give good reasons for disregarding the plaintiff's treating medical source.**

Plaintiff contends that the ALJ failed to give good reasons for affording little weight to the opinion of her treating physician, Kevin Fitzgerald, M.D., and improperly gave substantial weight to the opinion of a non-examining agency physician, Dinesh Tanna, M.D. (AR 17-18, 233-39). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.9527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

5

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On August 21, 2008, non-examining agency physician, Dr. Dinesh Tanna, reviewed plaintiff's medical record to assess her physical residual capacity (AR 233-39). This review included notes from a consulting examination performed by June Hillelson, D.O., on August 5, 2008 (AR 225-30, 239). In this examination, Dr. Tanna found that plaintiff could frequently lift 10 pounds, sit about six hours in an 8-hour workday, stand and walk about two hours in an 8-hour workday, and that she required the ability to periodically alternate sitting and standing to avoid pain (AR 233). Dr. Tanna felt that plaintiff should never kneel, crouch, crawl or climb ladder, ropes or

6

scaffolds (AR 234). However, plaintiff could occasionally balance, stoop and climb stairs (AR 234). Dr. Tanna felt that plaintiff should avoid concentrated exposure to environmental hazards such as vibration, machinery and heights (AR 236).

On April 7, 2010, plaintiff obtained a sworn statement from Dr. Fitzgerald, an anesthesiologist with a fellowship in pain management, regarding plaintiff's limitations (AR 334-43). Dr. Fitzgerald stated that he treated plaintiff between March 2007 and March 2010 (AR 335). His working diagnosis for plaintiff's pain is "lumbar radiculopathy in the S1 nerve root as well as degenerative disc disease and also lumbosacral spondylosis" (AR 335). In March 2010, the doctor administered a facet injection for arthritis in the back (AR 337). At that time plaintiff was prescribed a muscle relaxant (Zanaflex) and was taking pain relievers such as ibuprofen and Vicoden (AR 337). The doctor agreed that, in his opinion, plaintiff could lift ten pounds occasionally, and stand and walk for less than two hours in an 8-hour workday (AR 338-39). The doctor felt that plaintiff could sit, stand and walk for about 20-30 minutes at a time (AR 339). Dr. Fitzgerald felt that plaintiff's use of a cane was necessary at times (AR 339). The doctor agreed that, due to her pain, plaintiff could not work an 8-hour workday, five days a week with normal breaks (AR 339-40). The doctor testified that plaintiff could never bend, twist, squat, kneel, climb stairs or ladders, crouch, crawl or stoop, and that she could occasionally reach above the shoulders (AR 340-41). The doctor would also restrict plaintiff from working at unprotected heights or with moving machinery due to her back pain and to "cognitive dysfunction" from her medication (AR 341-42). Based on his review of the records, Dr. Fitzgerald felt that these restrictions have been in place since her alleged onset date in August 2005 when she suffered injuries in the automobile accident (AR 12, 341-42).

7

The ALJ addressed the opinion evidence of Drs. Tanna, Hillelson, Fitzgerald, and two other treating physicians as follows:

> With regard to the opinion evidence, the undersigned has considered the opinion of Dinesh Tanna, M.D., a State agency medical consultant. Dr. Tanna opined that the claimant has the residual functional capacity to perform sedentary work with a sit/stand at-will option (Exhibit 8F2). Dr. Tanna further indicated that the claimant can never crawl, crouch, kneel, or climb ladders, ropes, or scaffolds, and that she can only occasionally stoop, balance, and climb ramps and stairs (Exhibit 8F3). In addition, Dr. Tanna opined that the claimant must avoid concentrated exposure to vibrations, and that she must not work around hazards such as unprotected heights or dangerous/moving machinery (Exhibit 8F5). Because Dr. Tanna's opinion is generally consistent with the objective medical evidence of record, the undersigned affords it substantial weight in reaching a conclusion as to the claimant's residual functional capacity.
>
> The undersigned has also considered the opinions of Stephen Bloom, D.O., and Mona Merritt, M.D. In September 2006, Dr. Bloom released the claimant to work without restrictions (Exhibit 13F4). In October 2007 and December 2007. Dr. Merritt opined that the claimant needs "5 minute breaks with walking for 15 minutes" with "no lifting greater than 15 pounds," and "no bending or stooping" and with a work day "no greater than 8 hours" (Exhibit 1F I6-17). The undersigned concurs with Dr. Bloom and Dr. Merritt's opinions that the claimant is not disabled. However, considering the objective medical evidence of record, and affording some weight to the claimant's testimony, the undersigned finds the claimant's residual functional capacity more consistent with less than the full range of sedentary work.
>
> In addition, the undersigned has considered the opinion of June Hillelson, D.O., consultative examiner. At the conclusion of the consultative examination, Dr. Hillelson opined that the claimant "can perform sedentary activities, although after sitting for 60 minutes, she should stand for at least 5 minutes. She can stand for 30 minutes, lift 15 pounds, climb 2 flights of stairs, and walk for 1 mile. She should avoid repetitive bending and not be squatting or stooping" (Exhibit 6F 4). Because this examining physician's opinion is supported by the findings on examination and is generally consistent with the objective medical evidence of record, the undersigned affords it some weight in reaching a conclusion as to the claimant's residual functional capacity.
>
> Consistent with SSR 96-2p, the undersigned has also considered the opinion of Kevin Fitzgerald, M.D., the claimant's treating physician. In April 2010, Dr. Fitzgerald limited the claimant to performing significantly less than the full range of sedentary work (Exhibit 18F7), further indicating that she could not perform full time work on a regular basis (Exhibit 18F8). However, little weight can be afforded to

8

> Dr. Fitzgerald's opinion, since it is inconsistent with his findings on examination and with the other objective medical evidence of record. Four months before he issued his opinion, Dr. Fitzgerald reported that the claimant "has gotten good relief with intermittent facet injections" (Exhibit 9F3). Similarly, he indicated that her radicular symptoms had disappeared in March 2010 (Exhibit 9F2). And, at the same time he issued his opinion, Dr. Fitzgerald reported that the claimant experienced 65% pain relief for two and one-half to three months from facet injections (Exhibit 18F5).

(AR 18).

Viewing the evidence as a whole, the Court concludes that the ALJ gave good reasons for the weight attributed to Dr. Fitzgerald's opinion. *Wilson*, 378 F.3d at 545. In this regard, the ALJ noted that contrary to Dr. Fitzgerald's opinion, two other treating physicians (Drs. Bloom and Merritt), a consultative examiner (Dr. Hillelson) and a non-examining agency physician (Dr. Tanna) expressed opinions that plaintiff could perform a limited range of sedentary work. Accordingly, plaintiff's claim of error will be denied.

### B. Substantial evidence does not support the credibility determination.

Plaintiff contends the ALJ's credibility determination is not supported by substantial evidence because the ALJ relied on plaintiff's daily activities "to besmirch [her] credibility" without focusing on the entire record and that the discrepancies in plaintiff's testimony were "hardly significant" to undermine her credibility. Plaintiff's Brief at pp. 14-16. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's

9

credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility as follows:

> In evaluating the persuasiveness of the testimony, the undersigned notes that the claimant described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In addition to the activities described in her testimony above, the claimant completed a function report in which she indicated that she prepares lunch for herself, *visits her best friend and cousin at their homes*, reads, listens to music, talks on the phone, uses the internet, text messages (Exhibit 3E1), goes outside daily (Exhibit 3E4), *goes out to eat*, and *goes to church* (Exhibit 3E5). Also, aside from the two part time jobs that the claimant has held since the application date (as described above), the claimant reported in August 2008 that she was doing some babysitting (Exhibits 9F 3, 11F 13). Overall, the claimant's actual daily activities reveal a significantly greater functional ability than alleged.
>
> Though the claimant has been prescribed multiple treatments for the alleged impairments, which weighs in her favor, medical records reveal that the treatments have been relatively effective in controlling her symptoms. For example, the claimant reported in July 2006 that physical therapy had helped "quite a bit" (Exhibit 13F 8). One month later, the claimant was noted to have made "significant improvements" with physical therapy (Exhibit 13F 5). Additionally, medical records show that the claimant has experienced pain reduction from her multiple medications (Exhibits 6F 2, 11F 13, 18). The claimant has also had "good relief" with facet injections (Exhibits 1F l, 4F 7, 6F 4, 9F 2-4). Furthermore, the claimant reported a twenty-five percent reduction in her pain level with hydrotherapy (Exhibit 5F 1).
>
> Further, the undersigned notes that there are significant inconsistencies between the claimant's statements on record. For example, the claimant reported

10

> that she can lift no more than ten pounds (Exhibit 3E 6), but she testified that she can lift up to fifteen pounds. Likewise, the claimant testified that she shops only once per month, though she previously reported that she shops once per week (Exhibit 3E 4). These discrepancies seriously undermine the claimant's credibility.

(AR 17) (emphasis in original).

Plaintiff has failed to present a compelling reason to disturb the ALJ's credibility determination. The ALJ could properly rely on plaintiff's daily activities as a basis for finding that her claim of a disabling condition was not credible. While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

In addition, the ALJ could properly observe inconsistencies in plaintiff's reported ability to lift and travel. In her function report dated June 18, 2008, plaintiff stated that she could lift less than 5 to 10 pounds, suggesting that she could not perform even light sedentary work (AR 162, 164). *See* 20 C.F.R. § 416.967(a) (defining sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). At her hearing on April 14, 2010, plaintiff testified that she could lift about 15 pounds, an amount

11

which would not exclude sedentary work (AR 28, 42). Contrary to plaintiff's contention, her inconsistent reports regarding her ability to lift represent the difference between the ability to perform sedentary work (i.e., lift 15 pounds) and the inability to perform sedentary work (i.e., lift less than 5 pounds). Plaintiff's statements regarding her ability to leave her home and shop are also significant. In June 2008, plaintiff stated that she was able to shop about once a week (AR 160), while at her hearing plaintiff testified that she could shop only about once a month (AR 50-51). The difference between being able to leave her house and shop about 52 times a year as opposed to shopping only 12 times per year is significant, with the latter testimony suggesting that she is essentially unable to leave her house to undertake a normal daily activity. Plaintiff's claim of error is denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: September 20, 2013                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge